STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

IN THE COURT OF COMMON PLEAS
NINTH JUDICIAL CIRCUIT
CIVIL ACTION NO. 09-CP-10-2215

POINTE JAMES PROPERTY
OWNERS ASSOCIATION, INC.,

    Plaintiff,

vs.

ARCH SPECIALTY INSURANCE
COMPANY, MT. HAWLEY
INSURANCE COMPANY,
and AMERICAN INTERNATIONAL
SPECIALTY LINES INSURANCE CO.,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

AMENDED SUMMONS
(DECLARATORY JUDGMENT)

TO:    PETER H. DWORJANYN, ESQUIRE, COUNSEL FOR DEFENDANT ARCH
    SPECIALTY INSURANCE COMPANY; CHARLES E. CARPENTER, JR., ESQUIRE,
    COUNSEL FOR DEFENDANT MT. HAWLEY INSURANCE COMPANY; and JOHN
    C. BONNIE, ESQUIRE, COUNSEL FOR DEFENDANT AMERICAN
    INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY;

YOU ARE HEREBY SUMMONED AND REQUIRED to answer the Amended

Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of

your Answer to the said Amended Complaint on the subscribers, at their offices, 92 Broad Street,

Charleston, South Carolina, 29401, within thirty (30) days after the service hereof, exclusive of the

day of such service. If you fail to do so, judgment by default will be taken against you for the relief

demanded in the Amended Complaint.

LEATH, BOUCH, CRAWFORD & VON KELLER LLP

By: _Jefferson Leath_

W. Jefferson Leath, Jr.
92 Broad Street
P.O. Box 59
Charleston, SC  29402
(843) 937-8811

and

J. Rutledge Young, III (#7260)
Brian C. Duffy
Lee Anne Walters
Duffy & Young, LLC
96 Broad Street
Charleston, SC  29401
(843) 720-2044
*Attorneys for Plaintiff Pointe James Property Owners*
*Association, Inc.*

Charleston, South Carolina

Dated: _april 7, 2010_

2

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

IN THE COURT OF COMMON PLEAS
NINTH JUDICIAL CIRCUIT
CIVIL ACTION NO. 09-CP-10-2215

POINTE JAMES PROPERTY
OWNERS ASSOCIATION, INC.,          )
                                   )
                                   )
              Plaintiff,           )
                                   )
vs.                                )          AMENDED COMPLAINT
                                   )          (DECLARATORY JUDGMENT)
ARCH SPECIALTY INSURANCE           )
COMPANY, MT. HAWLEY                 )
INSURANCE COMPANY,                 )
and AMERICAN INTERNATIONAL          )
SPECIALTY LINES INSURANCE CO.,     )
                                   )
              Defendants.          )
_____ )

The Plaintiff complaining of the Defendants above named, alleges and would show unto this

Honorable Court as follows:

### PARTIES AND JURISDICTION

1.      Plaintiff Pointe James Property Owners Association, Inc. ("Pointe James POA")

is a South Carolina non-profit corporation, which is a Horizontal Property Regime, constituting a

multi-structure, 128 unit condominium complex with pertinent structures known as the Pointe

James Condominiums located on James Island, South Carolina. The Plaintiff is the judgment

creditor of an entity known as Pointe James Lodging, LLC, which is and was an insured of the

Defendants.

2.      Defendant Arch Specialty Insurance Company ("Arch") is a Nebraska

Corporation with its principal place of business in Omaha, Nebraska.   Arch is an insurance

company which issued certain policies of insurance, covering the activities of JMG Realty, Inc. and Pointe James Lodgings LLC in the State of South Carolina.

3.      Defendant Mt. Hawley Insurance Company ("Mt. Hawley") is an Illinois corporation with its principal place of business in Peoria, Illinois.    Mount Hawley is an insurance company which issued certain policies of insurance covering the activities of Pointe James Lodgings LLC in the State of South Carolina.

4.      Defendant American International Specialty Lines Insurance Company (AISLIC) is a Stock Insurance Company having its principal place of business at 70 Pine Street in New York, New York, and issued its policy number 5191340, as a renewal of policy number 9745864, insuring Pointe James Lodgings LLC as an excess or umbrella insurance policy, excess of the Arch Policy described above.

5.      This Court has personal jurisdiction over the parties to this action.

6.      This Court has subject matter jurisdiction over the present controversy.

7.      Venue is proper in Charleston County under S.C. Code § 15-7-30.

8.      This action is a declaratory judgment action to determine the Defendants' liability for payment under their policies of the judgment obtained by the Plaintiff against the insured of the Defendants, Pointe James Lodgings LLC, under the applicable policies cited above.

9.      The Confession of Judgment obtained by Plaintiff herein was a direct and proximate result of a settlement obtained between the Plaintiff and Point James Lodgings LLC as a result of the First Amended Complaint and its allegations brought against Pointe James Lodgings LLC in Civil Action No. 07-CP-10-3450 in this Court, a copy of which Amended Complaint is attached hereto as Exhibit "A."

## FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment in Regard to Three Defendants' Policies)

10.     Plaintiff repeats and realleges its allegations of the preceding paragraphs as if set forth herein verbatim.

11.     This is an action for a declaratory judgment brought pursuant to the Uniform Declaratory Judgment Act, SC Code § 15-53-10, *et seq.*

12.     Under SC Code § 15-53-20 "Courts of records within their respective jurisdiction shall have the power to determine rights, status and other legal relations whether or not further relief is or could be claimed".

13.     That as a result of the insured claims made against these Defendants' insured, Pointe James Lodging LLC, the Plaintiff obtained a judgment against Pointe James Lodging LLC which these insurers are required to satisfy pursuant to their various policies issued as indicated above, all insuring Pointe James Lodgings LLC.

14.     That all insured Defendants herein were notified of the claims of the Plaintiff against their insured, Pointe James Lodging LLC, and all wrongfully denied both their obligation to defend and their obligation to indemnify.

15.     That accordingly, a justicible controversy exists among the parties and which the parties have a legal and actual interest, which is ripe for resolution. The Plaintiff prays that the Court inquire into the dispute among the parties, review the various insurance policies issued in light of the underlying facts and law and issue a declaratory judgment declaring that all three insured Defendants are obligated to pay the judgment obtained against their insured, Pointe James Lodgings LLC, pursuant to the terms and conditions of the various policies.

3

WHEREFORE, Plaintiff prays the Court to issue an order declaring the rights of the parties, including the status of Pointe James Lodgings LLC as an insured pursuant to the policy language of the various policies at issue, to declare that coverage is in place, and further to declare that Plaintiff Pointe James Property Owners Association, Inc. have judgment against these Defendants for the amount of the Judgment obtained against Pointe James Lodging LLC together with pre-judgment interest, costs and attorneys' fees. if applicable.

This 7th day of _____April_____, 2010, at Charleston, South Carolina.

LEATH, BOUCH, CRAWFORD & VON KELLER LLP

By: _____
W. Jefferson Leath, Jr.
92 Broad Street
P.O. Box 59
Charleston, SC 29402
(843) 937-8811

and

J. Rutledge Young, III (#7260)
Brian C. Duffy
Lee Anne Walters
Duffy & Young, LLC
96 Broad Street
Charleston, SC 29401
(843) 720-2044
*Attorneys for Plaintiff Pointe James Property Owners
Association, Inc.*

4

STATE OF SOUTH CAROLINA                 )          IN THE COURT OF COMMON PLEAS
                                        )
COUNTY OF CHARLESTON                    )          C/A NO. 07-CP-10-3450
                                        )
POINTE JAMES PROPERTY                   )
OWNERS ASSOCIATION, INC.,               )
and RICHARD FREEMAN III                 )
and JAMES M. LEE III, INDIVIDUALLY,     )
AND ON BEHALF OF ALL OTHERS             )
SIMILARLY SITUATED                      )
                                        )
            Plaintiffs,                 )          FIRST AMENDED
      Vs.                               )          COMPLAINT
                                        )          (JURY TRIAL DEMANDED)
                                        )
POINTE JAMES LODGINGS, LLC,             )
SPECTRUM  PROPERTIES, INC.,             )
JMG REALTY INC., ALL-TEX ROOFING,       )
INC., & PARADISE POOLS CONSTRUCTION,    )
INC.,                                   )
                                        )
            Defendants.                 )
_____ )

The Plaintiffs, complaining of the Defendants above named, would allege and show unto this honorable Court as follows:

1.     Plaintiff Pointe James Property Owners Association, Inc. ("Pointe James POA") is a South Carolina non-profit corporation which is a Horizontal Property Regime, constituting a multi-structure, 128 unit condominium complex with pertinent structures located on James Island, South Carolina.  Pointe James POA is charged, *inter alia*, with the responsibility by virtue of the Master Deed by which it was created and by the By-Laws which govern its operations, to maintain, repair and replace the common elements of the regime.

2.     Plaintiff Richard Freeman IV is a citizen and resident of the State of South Carolina, County of Charleston, and is an individual unit holder with an undivided ownership interest in the common areas as a tenant in common with all other property owners.

3.    Plaintiff James M. Lee III is a citizen and resident of the State of South Carolina, County of Sumter, and is an individual unit holder with an undivided interest in the common areas as a tenant in common with all other property owners.

4.    Defendant JMG Realty Inc. ("JMG") is a Georgia corporation having its principal place of business in Fulton County, Georgia.

5.    Defendant, Pointe James Lodgings, LLC ("PJ Lodgings") is a Michigan corporation having its principal place of business outside of the state of South Carolina.

6.    Defendant Spectrum Properties Inc. ("Spectrum") is a South Carolina corporation having its principal place of business in Charleston County.

7.    Defendant All-Tex Roofing, Inc. ("All-Tex") is a Texas Corporation having its principal place of business outside the State of South Carolina.

8.    Defendant Paradise Pools Construction, Inc. ("Paradise Pools") is a South Carolina corporation having its principal place of business in Dorchester County, South Carolina.

9.    This Court has personal jurisdiction over the parties to this action.

10.    This Court has subject matter jurisdiction over the present controversy.

11.    Plaintiffs demand a trial by jury on all claims.

## FACTUAL RECITALS

12.    In 2005 and at other times relevant to this action JMG was in the business of property management and/or property repair, renovation, maintenance, improvement and the conversion of existing residential buildings into condominiums.

13.    On April 18, 2005, JMG through its President, Leonard Blevins, signed an agreement to purchase Pointe James Apartments, located on James Island, South Carolina, from Pointe James Apartments, LP.

2

14.    Leonard Blevins was a principal in charge of the Defendant Pointe James and President and shareholder of the Defendant JMG Realty.

15.    On May 17, 2005, subsequent to the execution of the agreement to purchase but prior to closing, JMG obtained a property condition assessment of the Pointe James apartments that was prepared for JMG and KeyBank National Association ("Property Solutions Report").

16.    On May 17, 2005, PJ Lodgings was organized as a Limited Liability Company under the laws of the State of Michigan.

17.    PJ Lodgings was organized for the express purpose of maintaining, renovating, repairing, improving, purchasing, and converting the Pointe James apartments at 1402 Camp Road on James Island to a condominium to be sold for profit.

18.    As a result of the Property Solutions Report, JMG and PJ Lodgings learned that the Pointe James Apartments had numerous defective conditions as set forth with particularity in the report.

19.    As a result of the Property Solutions Report, JMG and PJ Lodgings learned that the Pointe James Apartments required reserve funds in the amount of at least $440,000 to address the ongoing maintenance of the units and common areas as they existed at the time the report was completed in May of 2005.

20.    On June 3, 2005, JMG assigned its contract to purchase Pointe James apartments to the Defendant PJ Lodgings.

21.    PJ Lodgings purchased the Pointe James apartments on June 8, 2005, directly from Pointe James Apartments Limited Partnership.

22.    In or around June 2005, JMG entered into a Property Management Agreement with PJ Lodgings and was charged with managing the remaining rental units prior to their sale.

23.    JMG carried out its professional services through the conduct of its agents and employees including but not limited to, Leonard Blevins and its employee Steve Haskins.

24.    JMG's professional services included but were not limited to leasing of the remaining rental units before sale to individual owners, maintenance of the premises, oversight and supervision of the renovations and repairs to the premises, selection of appropriate subcontractors to perform work to the premises, approval and payment of subcontractors for work performed to the premises.

25.    PJ Lodgings and JMG acted as general contractors and directed, controlled, and supervised the maintenance, renovation, repair and conversion of the Pointe James apartments.

26.    As part of its maintenance, renovation and repairs, Defendant PJ Lodgings inspected the subject property and discovered and documented (in part) the substandard and defective condition of the general and limited common elements of the subject property as set forth in the report by Robert Epps ("Epps Report") dated June 15, 2005.

27.    As part of its conversion from apartments to condominiums, in or around July 2005, Defendant PJ Lodgings recorded the Master Deed of Pointe James Horizontal Property Regime.

28.    As a result of the Epps report and the Property Solutions report, PJ Lodgings was aware that as of June 2005, the general and limited common elements of the subject property were defective and severely damaged in a number of areas as set forth in the reports, and that extensive and comprehensive repairs or replacement were necessary to the windows, plumbing, electrical, grading, drainage, landscaping, siding, roofing, parking lot, swimming pool, and other areas and systems of the subject property, and that reserves in excess of $440,000 were necessary to maintain the complex.

4

29.    As a result of the Epps report and the Property Solutions Report, PJ Lodgings was aware at the time of the conversion of the subject property from apartments to a condominium that the general and limited common elements of the subject property were at the end of their useful service life and not in good repair.

30.    From June 2005, through at least February of 2006, PJ Lodgings and JMG acted as general contractors and employed, controlled and directed various subcontractors to perform renovations, repairs and improvements to the existing apartment complex in an effort to remedy the known defective conditions of the limited and general common elements of the subject property.

31.    Between June of 2005 and at least February of 2006, PJ Lodgings relied on JMG to properly manage the remaining rental units and to supervise, investigate, review, and approve the renovations, repairs, maintenance and improvements to the common elements being performed by subcontractors for the benefit of the Plaintiff POA.

32.    Between June of 2005 and at least February of 2006, through the use of various subcontractors, PJ Lodgings and JMG attempted to completely repair, renovate, and improve the defective conditions known to and discovered by them.

33.    As part of the conversion to condominiums, PJ Lodgings and/or JMG hired one or more subcontractors to repair the conditions which it discovered as a result of the Epps report and the Property Solutions Report.

34.    Between June 2005 and at least February of 2006 and acting through their various agents, contractors, and subcontractors , JMG and PJ Lodgings did not properly or fully renovate or repair the general and limited common elements of the subject property.

35.    After PJ Lodgings and JMG had attempted to complete comprehensive renovations and repairs, future weather events that occurred and continue to occur through the present day permit water intrusion through the outside building envelope and cause new, previously non-existent damage to the common elements of the subject property and to other property in the Pointe James Complex beyond simply the work which was performed by PJ Lodgings, JMG and their subcontractors.

36.    As a result of the negligent and defective workmanship, maintenance, renovations and repairs by the various subcontractors to PJ Lodgings and JMG, previously non-existent damage to the interior common elements and exterior common elements of the subject property has occurred as a result of water intrusion and water runoff.

37.    The new, previously non-existent damage to the interior and exterior common elements as set forth herein includes but is not limited to new structural damage to the interior common elements; new damage to common plumbing and electrical systems; new damage to the windows and doors of the condominium complex; new damage to the parking lot, landscaping, grading of the condominium complex, new damage to the roofing, siding, exterior building envelope; and new damage to other exterior common elements.

38.    Acting through their agents and subcontractors, PJ Lodgings and JMG did not properly maintain, renovate or repair the limited or general common elements or create or adequately fund a reserve account for the purpose of repairs and maintenance to the general and limited common elements of the subject property prior to turning the property over to the Plaintiff POA or selling an interest in the common areas to the individual Plaintiffs.

39.    As a result of the deficient repairs, maintenance and improvements set forth herein and completed by the subcontractors to PJ Lodgings and JMG, there are additional and

significant deficiencies and code violations to the general and limited common elements of the subject property, which have caused new and/or continuing damage to the general and limited common elements of the subject property. All of these deficiencies will have to be remediated.

40. On June 10, 2005, PJ Lodgings through its agent JMG contracted with All-Tex to renovate and repair the roof and siding.

41. During the course and scope of its work, All-Tex conducted an inadequate investigation of the condition of the siding and failed to exercise due care in renovating and repairing the roof and siding and thereby caused new damage to the general and limited common elements of the Pointe James Complex.

42. Through its defective and deficient work, All-Tex violated standards applicable in the industry relating to the proper inspection, repair, and replacement of vinyl siding.

43. All-Tex's defective work on the exterior of the building caused damage to the interior portions of the subject buildings beyond simply the roof and siding such that other parts of the limited and general common elements have been damaged by All-Tex's defective work.

44. All-Tex, hired by PJ Lodgings through its agent JMG, performed repairs without due care, which led to future water intrusion and new resulting damage to the limited and common structural elements of the subject property as set forth herein.

45. On July 26, 2005, PJ Lodgings through its agent JMG contracted with Paradise Pools to renovate and repair the pool and deck at the Pointe James Complex.

46. Paradise Pools conducted an inadequate investigation of the condition of the pool and failed to exercise due care in renovating and repairing the pool and deck and thereby caused new damage to the general and limited common elements of the Pointe James complex.

47.    Through its defective and deficient work, Paradise Pools violated standards applicable in the industry relating to the proper inspection and repair of pools and pool decking.

48.    The defective work of Paradise Pools caused damage to the pool itself and to other portions of the subject property beyond the pool such that other parts of the limited and general common elements have been damaged by Paradise Pool's defective work.

49.    Paradise failed to exercise due care in renovating and repairing the pool and deck and thereby caused further damage to the general and limited common elements.

50.    Defendant Spectrum served as the property manager for the Pointe James condominium complex from August 1, 2005 until approximately November of 2006, pursuant to a written management agreement, which required Spectrum to perform certain duties for the benefit of the Plaintiffs.

51.    During the course of its management of the subject property, Defendant Spectrum knew or should have discovered that the general and limited common elements of the subject property were defective and in extremely poor condition as set forth herein.

52.    During the course of its management, Spectrum failed to properly inspect or document the conditions of the property or to properly manage the necessary repairs to the complex.

53.    Spectrum conducted an inadequate investigation of the condition of the subject property and failed to exercise due care in inspecting, reporting, supervising, managing and otherwise maintaining the subject property and thereby caused new damage to the general and limited common elements of the Pointe James Apartments.

54.    Through its defective and deficient work, Spectrum violated standards applicable in the industry relating to property management.

8

55.    During the course of Spectrum's management, its failure to oversee and manage necessary repairs to the general and common elements caused additional consequential damage to the general and limited common elements of the subject property and allowed continued deterioration of the general and limited common elements.

56.    Neither the Defendant JMG nor the Defendant PJ Lodgings actually performed any direct maintenance, renovation, or repairs to the building but at all relevant times these entities conducted work at the subject property through the use of subcontractors.

57.    All of the work which was done at the Pointe James Complex was for the benefit of the Plaintiff POA and the unit-holders who would assume ownership of the common elements under the language of the Master Deed.

58.    None of the work done to the subject property was for the benefit of JMG or PJ Lodgings.

59.    Neither the Defendant JMG nor the Defendant PJ Lodgings engaged in any residential construction or in any activity in support of residential construction, but rather at all times the work being performed at the direction of these defendants was in furtherance of the maintenance, renovation, repair and improvement of existing buildings.

60.    PJ Lodgings, JMG, Spectrum, Paradise, and All-Tex all profited financially from their conduct as set forth herein.

61.    All of the defects set forth herein and those to be discovered during the course of additional inspections and testing should have been repaired by PJ Lodgings and/or JMG at the time of the conversion to condominiums or sufficient funding should have been set aside by the developers to pay for the necessary repairs.

62.    All of the defects set forth herein and those to be discovered during the course of additional inspections and testing will now have to be repaired.

63.    As a direct and proximate result of the defects and conduct set forth herein, the general and limited common elements of the subject property have suffered consequential damage as a result of improper installation, repair or the failure to replace or repair — by JMG and/or PJ Lodgings through its agents and subcontractors — grading, siding, flashing, windows, doors, roofs, among other things, all of which led to continuous and repeated leaks and water damage since June 2005; such damage includes water damage to the underlying and the structural interior building components.

64.    The damages to the general and limited common elements of the subject property constitute property damage that is the result of one or more occurrences between June 2005 and the present day, meaning an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

65.    As a direct and proximate result of the conduct set forth herein Plaintiffs' buildings will have to be extensively torn apart and reconstructed, and the individual owners of the condominium units will suffer loss of use of the general and common elements.

66.    The damages caused to the Plaintiffs are a direct and proximate result of one or more of the activities of the Defendants.

10

## CLASS ACTION ALLEGATIONS

67.    The individual plaintiffs bring this action as a proposed class action pursuant to South Carolina Rule of Civil Procedure 23(a) on behalf of a proposed class consisting of all those owners who purchased or otherwise acquired a proportionate interest in the general and limited common elements of the Pointe James condominium and who suffered damages as alleged herein.

68.    Excluded from the Class are Defendants, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which any Defendants have or had a controlling interest.

69.    Excluded from the class are any claims related to damage to individual property which is not part of the limited or common elements of the Point James condominiums.

70.    The members of the Class are so numerous that joinder of all members is impracticable.

71.    Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct.

72.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.

73.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class individually to redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

11

**FOR A FIRST CAUSE OF ACTION**
**(Negligence as to all Defendants)**

74.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 73 above as if set forth herein verbatim.

75.    The Plaintiffs have sustained damages as a direct and proximate cause of the joint and several negligence, carelessness, recklessness, willfulness, and wantonness of the Defendants for which they are jointly and severally liable and as hereinafter more fully set forth in one or more of the following particulars.

76.    The Defendants PJ Lodgings and JMG owed a duty of care to the Plaintiffs to properly oversee the maintenance, repair, renovation and improvement of the subject property, to properly inspect the subject property, to properly repair the subject property in accordance with the applicable building codes, properly approved plans and specifications, and accepted construction and workmanlike practices, to truthfully and accurately advertise the condition of the property and to deliver truthful information to the Plaintiffs.

77.    As set forth in the South Carolina Horizontal Property Act at § 27-31-430, the Defendant PJ Lodgings owed a duty to the Plaintiffs to disclose the then present condition of all general common elements, including: 1) a good faith estimate of the remaining useful life of each item 2) a list of any notices of uncured violations of building codes or other county or municipal regulations, and 3) the estimated cost of curing those violations.

78.    The Defendants JMG and Spectrum, as professional property managers, owed a duty of care to manage, investigate, supervise, inspect and maintain the general and common elements of the subject property and to make repairs and renovations to the existing property with due care in accordance with accepted industry standards.

12

79.    The Defendant All-Tex owed to Plaintiffs a duty to properly inspect the roofing and siding and to properly repair the roofing and siding in accordance with the applicable building codes and industry standards.

80.    The Defendant Paradise Pools owed to Plaintiffs a duty to properly inspect and repair the pool in accordance with the applicable building codes and industry standards.

81.    Acting directly and through the use of agents, contractors, and subcontractors, the Defendants PJ Lodgings and JMG were negligent, careless, reckless, willful, and wanton in repairing, renovating, maintaining, improving, inspecting, and supervising repairs to the subject property without proper regard for applicable building codes, properly approved construction plans and specifications, good supervisory and construction practices more particularly set forth as follows:

    a.    In failing to properly investigate and inspect the condition of the subject property,

    b.    In failing to repair the exterior siding system on the subject property,

    c.    In failing to repair the exterior windows and doors on the subject property,

    d.    In failing to repair the drainage defects of the subject property,

    e.    In failing to repair or replace the roofs of the subject property,

    f.    In failing to repair the tennis courts, swimming pool, and parking lot of the subject property,

    g.    In failing to repair the plumbing of the subject property or bring it up to current and applicable building codes,

    h.    In failing to repair the HVAC systems of the subject property or bring it up to current and applicable building codes,

13

i.  In failing to repair the electrical systems of the subject property or bring it up to current and applicable building codes,

j.  In failing and omitting to properly supervise work forces and subcontractors,

k.  In failing and omitting to repair the subject property according to plans and specifications and applicable building codes,

l.  In failing and omitting to use due care in repairing the subject property,

m.  In failing to make full, truthful and accurate disclosures about the nature and scope of repairs being done to the property as part of the conversion and marketing,

n.  In failing to comply with the South Carolina Horizontal Property Act,

o.  In such other particulars as will be shown at trial.

82.    The Defendants Spectrum and JMG were negligent, careless, reckless, willful and wanton in inspecting, maintaining, repairing, and supervising repairs to the subject property without proper regard for applicable building codes, properly approved construction plans and specifications, good supervisory, management or construction practices more particularly set forth as follows:

a.  In failing to reasonably investigate and inspect the condition of the subject property during the term of its management,

b.  In failing to manage and oversee reasonable and authorized repairs to the subject property,

c.  In such other particulars as will be shown at trial.

83.    The Defendant All-Tex was negligent, careless, reckless, willful, and wanton in inspecting, repairing, and supervising repairs to the subject property without proper regard for

14

applicable building codes, properly approved construction plans and specifications, good supervisory and construction practices more particularly set forth as follows:

    a.  Failing to properly investigate the condition of the siding;

    b.  Failing to replace defective siding;

    c.  Failing to investigate the condition of the siding substrate;

    d.  Using improper nailing to attach replacement siding;

    e.  In such other particulars as will be shown at trial.

84.    The Defendant Paradise Pools was negligent, careless, reckless, willful, and wanton in inspecting, repairing, and supervising repairs to the subject property without proper regard for applicable building codes, properly approved construction plans and specifications, good supervisory and construction practices more particularly set forth as follows:

    a.  Failing to properly investigate the condition of the pool;

    b.  Failing to properly repair the pool and decking;

    c.  In such other particulars as will be shown at trial.

85.    As a direct and proximate result of the Defendants' conduct the general and limited common elements of the subject property contain all of the defects and deficiencies as now exist therein.

86.    As a direct and proximate result of the negligence, recklessness, carelessness, willfulness, and wantonness of the Defendants as set forth above, the general and limited common elements of the subject property will have to be completely reconstructed on the exterior, and Plaintiffs will suffer consequential damages and the loss of use thereof.

15

## FOR A SECOND CAUSE OF ACTION
### (Breach of Fiduciary Duty as to PJ Lodgings)

87.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 86 above as if set forth herein verbatim.

88.    Pursuant to South Carolina law, PJ Lodgings had a fiduciary duty to the Plaintiff POA and each individual plaintiff to ensure that the common elements of the regime were in good repair at the time that ownership, maintenance and repair of the common areas were transferred to individual plaintiffs or the POA, or, in the alternative, to provide the POA with sufficient funds to bring the common elements up to standard as of the date of transfer.

89.    Pursuant to South Carolina law, PJ Lodgings had a fiduciary duty to the Plaintiffs to create and adequately fund a reserve account for the purpose of fully funding necessary repairs and maintenance to the general and limited common elements of the subject property prior to turning the property over to the Plaintiffs.

90.    As of the date of transfer of the common elements of the Pointe James condominium complex to Plaintiffs, the general and limited common elements thereof were not in good repair, were defective, and PJ Lodgings did not provide the Plaintiff with sufficient funds to bring the defective common elements up to standard.

91.    PJ Lodgings breached its fiduciary duties to the Plaintiffs.

92.    As a direct and proximate result of PJ Lodgings' breach of its fiduciary duties, the Plaintiffs will have to expend considerable funds to bring the common elements up to standard, all to their damage.

16

**FOR A THIRD CAUSE OF ACTION**
(Breach of Implied Warranty of Good and Workmanlike Service as to PJ Lodgings, JMG,
All-Tex and Paradise)

93.    Plaintiffs repeat and reallege the allegations made in Paragraphs 1 through 92 above as if set forth herein verbatim.

94.    In undertaking to perform repairs on the Plaintiffs' buildings, PJ Lodgings, JMG, All-Tex and Paradise held themselves out as specially qualified to perform the task of effecting repairs to existing residential buildings and the specialty portions therof, and therefore impliedly warranted as a matter of law that the work undertaken would be performed in a careful, diligent and workmanlike manner in accordance with industry standards and applicable building codes and would be free from faults and defects.

95.    Each of these Defendants breached the implied Warranty of Good and Workmanlike Service, and the work that was performed by these Defendants was not of good quality, or workmanlike, thereby proximately resulting in the damages herein complained of.

96.    As a direct and proximate result of the breach of the Implied Warranty of Good and Workmanlike Services aforesaid, Plaintiffs have suffered damages as set out above.

**FOR A FOURTH CAUSE OF ACTION**
(Breach of Contract as to Spectrum)

97.    Plaintiffs repeat and reallege the allegations made in Paragraphs 1 through 96 above as if set forth herein verbatim.

98.    The POA had a contract with Spectrum for purposes of property management.

99.    Spectrum breached the subject contract by failing to comply with its duties under the contract more particularly set forth as follows:

   a.    In failing to properly oversee the performance of subcontractors and vendors hired to perform services for the benefit of the POA and the individual plaintiffs;

17

b.　　In failing to properly inspect the common areas;

c.　　In failing to properly maintain and repair the general and limited common areas;

d.　　In other particulars to be shown at trial.

100.　　The POA suffered damages as a direct and proximate result of the breaches set forth herein.

## FOR A FIFTH CAUSE OF ACTION
### (Unfair Trade Practices as to PJ Lodgings)

101.　　Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 100 above as is set forth herein verbatim.

102.　　Section 27-31-430 of the South Carolina Horizontal Property Act provides that an owner of a property who undertakes a conversion to condominiums through the filing of a master deed must make certain disclosures to the prospective purchasers and further provides that a failure to make a disclosure required by the act constitutes a violation of the South Carolina Unfair Trade Practices Act.

103.　　PJ Lodgings undertook conversion and is subject to the Act. By failing to comply with the South Carolina Horizontal Property Act, PJ Lodgings has violated South Carolina Code Ann. § 39-5-20 et seq. (Law Co-Op 1976).

104.　　Defendant PJ Lodgings engaged in unfair and deceptive acts or practices in or affecting commerce in violation of South Carolina Code Ann. § 39-5-20 et seq. (Law Co-Op 1976).

105.　　Such practices included marketing and selling Plaintiffs' buildings herein consisting of the common elements and one hundred twenty-eight condominium units, in a defective condition, failing to disclose and concealing the true condition of the subject

18

properties, misrepresenting future repairs, amenities, and improvements to be made to the subject property, and failing adequately to create or fund a reserve account.

106.    These unfair and deceptive practices were immoral, unethical and oppressive and offensive to public policy, and are capable of repetition.

107.    Defendant's actions in violation of SCUTPA were knowing and willful, had a widespread impact and were in violation of public policy.

108.    Plaintiffs have suffered direct and proximate harm as a result of the Defendants' unfair or deceptive practices or acts.

109.    As a result, Plaintiffs are entitled to recover both reasonable attorney's fees, treble damages and costs of this action pursuant South Carolina Code Ann. §39-5-140 as the actions taken by these Defendants were willful and knowing.

WHEREFORE the Plaintiffs pray for judgment, joint and several, to be entered against the Defendants in an amount to be determined by the trier of fact, and for further exemplary damages to the extent permitted by law. Plaintiffs demand that any damage award be trebled pursuant to South Carolina Code Ann. § 39-5-140, including attorney's fees, expenses, investigative costs, interest and prejudgment interest. Finally, Plaintiffs demand a trial by jury.

J. Rutledge Young III
Brian C. Duffy
Lee A. Walters
DUFFY & YOUNG, LLC
96 Broad Street
Charleston, SC 20401
(843) 720-2044
(843) 720-2047 (fax)

&

W. Jefferson Leath Jr.
LEATH, BOUCH, CRAWFORD
& VON KELLER LLP
92 Broad Street
Charleston, SC 29401
(843) 937-8811

Attorneys for the Plaintiffs

Charleston SC
October 22, 2008

20